Michael K. De Kruif, SBN 214714
Law Offices of Richard M. Lester
7334 Topanga Canyon Blvd., Suite 200
Canoga Park, CA 91303
818-906-1111 | 818-992-1515
dekruifm@lesterlaw.net

Attorney for Plaintiff,
JACKLYN FISCALINI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKLYN FISCALINI,<br>      Plaintiff,<br><br>vs.<br><br>SANTA CRUZ COUNTY SHERIFF'S DEPARTMENT; JIM HART, in his official capacity as Sheriff of Santa Cruz County; JENNA BALDWIN, in her official capacity as a Santa Cruz County Sheriff's Deputy; WELLPATH MANAGEMENT, INC. a Delaware Corporation; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California Corporation; SARAH HEWETT, R.N., in her official capacity as Interim Program Manager and DOES 1 through 25, Inclusive<br>      Defendants. | Case No.:<br><br>COMPLAINT FOR MONETARY RELIEF |

PETITION FOR MONETARY RELIEF

1. This is a civil complaint for monetary relief against the County of Santa Cruz

    Sheriff's Department for the violation of plaintiff's civil rights under 42 U.S. C.1983

    and her common law rights by terminating her employment solely for exercising her

    First Amendment rights to freedom of association and freedom of speech, and under

    the analogous provisions of the California Constitution for the exercise of her First

Amendment right to freedom of association and freedom of speech, as well as deprivation of due process and equal protection of the law under the Fourteenth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

2. This action is filed in the United States District Court for the District of Northern California. This Court has original jurisdiction over the plaintiff's civil rights claims under 42 U.S.C. Section 1983, pursuant to 28 U.S.C. Section 1331 (federal question) and 28 U.S.C. 1343.

3. This Court has supplemental jurisdiction over plaintiff's related state claims pursuant to 28 U.S.C. Section 1367(a). Venue is proper in this jurisdiction under 28 U.S.C. Section 1391(b) because all of the events that support the plaintiff's allegations occurred in this judicial district and because the defendants are located in this judicial district.

## PARTIES

4. Jacklyn Fiscalini resides in Watsonville, Santa Cruz County, California.

5. Santa Cruz County Sheriff's Department is a governmental agency within the county of Santa Cruz, California.

6. Santa Cruz Sheriff Jim Hart performs all of his duties as sheriff within Santa Cruz County.

7. Jenna Baldwin, in her capacity as a Santa Cruz Sheriff's deputy, performs her job duties within the county of Santa Cruz.

8. Wellpath Management, Inc. is a Delaware Corporation doing business in Santa Cruz County with the Santa Cruz Jail.

9. California Forensic Medical Group is a California Corporation doing business with the Santa Cruz Jail within Santa Cruz County.

10. Sarah Hewett, R.N., as Interim Program Manager for California Forensic Medical Group, was the direct supervisor of the plaintiff and was working for the Santa Cruz Jail in Santa Cruz County.

FACTUAL ALLEGATIONS

11. Sometime in early 2018 Jacklyn Fiscalini applied online for a Licensed Vocational Nurse position with California Forensic Medical Group, Inc. (hereinafter, "CFMG") working within the Santa Cruz County Jail. She was later interviewed by CFMG at the Santa Cruz County Jail.

12. Jacklyn Fiscalini was hired by the CFMG in March of 2018 to work within the Santa Cruz County Jail, Medical division. As part of the hiring process, Ms. Fiscalini was required to complete both a background check and drug testing. Ms. Fiscalini successfully completed both.

13. Ms. Fiscalini began her employment with CFMG in March of 2018 and was hired as a licensed vocational nurse.

14. Part of her duties during this employment were, passing inmates their medication, seeing patients within the medical department for wound dressing changes and other types of care as well as seeing inmates within their pods to render medical aid.

15. On Friday, August 17, 2018 Ms. Fiscalini was waiting for an officer escort to a pod to provide medical treatment to an inmate. During this time, she was approached by Sheriff's Deputy Jenna Baldwin (hereinafter, "Deputy Baldwin"). Deputy Baldwin claimed to know Ms. Fiscalini and stated that she had met her a couple of years back outside of a bar. Ms. Fiscalini replied she did not believe that was true and that she only looked familiar because she was now working in the County Jail.

16. Deputy Baldwin then asked Ms. Fiscalini if she knew A.J. Ms. Fiscalini replied, "Is that a problem?" Deputy Baldwin replied, "It's not a problem unless it's a problem."

17. At the time of this exchange Ms. Fiscalini was dating A.J. and she considered him to be her boyfriend. A.J. is a member of the Hell's Angels Motorcycle Club.

18. Because Ms. Fiscalini knew that she did not know Deputy Baldwin, she found the conversation to be somewhat unsettling. After finishing up in the pod, Ms. Fiscalini asked Deputy Baldwin to come to the medical office to have a further conversation
///

regarding A.J. Deputy Baldwin never showed up for any additional conversation and Ms. Fiscalini eventually went home at the end of her shift.

19. Ms. Fiscalini was next scheduled to work on Tuesday, August 21, 2018.

20. Upon arriving at the jail, Ms. Fiscalini was met outside by her immediate supervisor, Sarah Hewett, RN, Interim Program Manager for CFMG. Ms. Hewett informed Ms. Fiscalini that she was being let go due to the revocation of her security clearance. Ms. Hewett also informed Ms. Fiscalini that she had attempted all weekend and all day Monday to keep her as an employee. She even approached her Sargent but was told to fire her.

21. Ms. Fiscalini was never informed why her security clearance was revoke but knew that nothing had change with her since she was hired in March.

22. In addition, Ms. Hewett stated that she had no issues with her work performance at all and that she felt bad being forced to let her go. It was solely based on a demand from the Santa Cruz County Sheriff's department.

23. Ms. Hewett actually reached out to Ms. Fiscalini on Friday, August 24, 2018 to see how Ms. Fiscalini was doing and expressed her own disappointment in the termination via email. In fact, she went further to state that Ms. Fiscalini is "a bright and gifted nurse" and that when she is done with schooling for her R.N. to send her resume and she would try to bring her back.

24. Due to the fact Ms. Hewett reached out to Ms. Fiscalini after the termination, Ms. Fiscalini alleges that Ms. Hewett was aware that she was violating Ms. Fiscalini's First Amendment Rights by following through with this unjust and wrongful termination.

25. Ms. Fiscalini was never given an opportunity to appeal her termination nor was she provided any information regarding why her security clearance was suddenly revoked.

///

///

26. Ms. Fiscalini is unaware of any other employees having been hired after successfully completing CFMG's background check and drug testing, and then being subsequently fired for an alleged security clearance revocation.
27. Furthermore, at no time was Ms. Fiscalini ever asked about her personal relationships by anyone other than Deputy Baldwin.
28. As the Interim Program Manager, Ms. Hewett was the direct supervisor of Ms. Fiscalini.  Ms. Hewett takes direction from the Sargent at the jail as well as her superior within CFMG.
29. All policies regarding the security clearance required to work within the Santa Cruz County Jail is determined and established by the County Sheriff Jim Hart.
30. Therefore, Ms. Fiscalini believes and alleges her termination was done at the direction of Jim Hart, acting in his official capacity as Santa Cruz County Sheriff.
31. Mr. Hart, as Santa Cruz County Sheriff is well aware of the US Constitution's First Amendment right to freedom of association.
32. In the days following her wrongful termination, Ms. Fiscalini tried to uncover why she was actually terminated and why the County Sheriff Jim Hart would insist on her firing.
33. The only precipitating event was Ms. Fiscalini's conversation with Deputy Baldwin and that conversation was simply an inquiry into her relationship with A.J.
34. Ms. Fiscalini alleges Deputy Baldwin must have had some information regarding A.J. and his membership in the Hell's Angels Motorcycle Club and this was her reasoning for questioning Ms. Fiscalini about such a personal matter within the workplace.
35. At the time of Ms. Fiscalini's termination, she was doing nothing more than dating a member of a motorcycle club.
36. Ms. Fiscalini alleges that due to her personal relationship with a member of the Hells Angels Motorcycle Club, she was wrongly terminated.

///

///

37. Ms. Fiscalini further alleges that she was wrongfully terminated due to some belief by law enforcement that anyone in or associated with a motorcycle club is a criminal despite her having already passed a background test
38. Ms. Fiscalini can only assume Sheriff Hart is biased as a law enforcement officer against anyone associated with a motorcycle club whether or not he/she is a member of said club.
39. Ms. Fiscalini's relationship with her boyfriend A.J. is protected by the US Constitution's First Amendment right to freedom of association as well as freedom of speech.
40. Ms. Fiscalini alleges Sheriff Hart had her terminated from her position simply for engaging in her First Amendment Right to freedom of association by dating a member of the Hells Angels Motorcycle Club.
41. After her termination, Ms. Fiscalini made additional contacts with persons with the Human Resource department of CFMG, her actual immediate employer.
42. She was told nothing more than her last day of employment and again that she was terminated due to a revocation of her security clearance.
43. These additional contacts with other County of Santa Cruz personnel as well as CFMG personnel all ended in the same result.  She was offered no recourse for her firing.  She was offered no opportunity to appeal the termination.
44. Sheriff Hart as well as Deputy Baldwin, CFMG and its owner Wellpath Management, Inc. and employee Sarah Hewett all stand by their assertion that Ms. Fiscalini was terminated based on the revocation of her security clearance.
45. Furthermore, the revocation of her security clearance was based entirely on the wrong assumption that dating a Hells Angels member is somehow equivalent with being a member oneself.
46. At no time during the hiring process or while the offer was being made, did anyone at Santa Cruz County Sheriff's department inform her that she was not allowed to date a member of a motorcycle club.

47. At no time during the hiring process or while the offer was being made, did anyone at CMFG or their parent company Wellpath Management, Inc. inform Ms. Fiscalini that her job would require her to end any and all relationships with people in her personal life who happened to belong to motorcycle clubs.

48. As a result, Ms. Fiscalini was left unemployed and suffered wage loss as a result of her termination.  In addition, she was unable to reference her employment with the Santa Cruz County Jail while seeking new employment as she had no explanation for her termination.in fact to this date, she has not received any legitimate reason for her termination

49. Finally, Ms. Fiscalini has suffered additional monetary damages in her loss of benefits which she would have received had she not been wrongfully terminate due to the discrimination against her by Sheriff Jim Hart, based solely on her dating a member of a motorcycle club.

## COUNT ONE

## VIOLATION OF CIVIL RIGHTS AGAINST ALL DEFENDANTS

50. Plaintiff repeats and re-alleges paragraphs 1-49 of this Complaint as if fully set forth herein.

51. All of the named defendants violated Ms. Fiscalini's Civil Rights (42 U.S.C. 1983, specifically her First and Fourteenth Amendment rights guaranteed in the United States Constitution.)

52. Ms. Fiscalini alleges she was terminated from her position with the Santa Cruz County Jail for the sole reason she was dating and thereby associating with a member of the Hells Angels Motorcycle Club. The Hells Angels MC is a social organization engaged in free speech through the use of their patch or emblem and their promotion of motorcycling and the motorcyclist lifestyle.

53. Motorcycle Clubs have received increased scrutiny over the past several years due to numerous news reports and articles involving specific motorcyclist involvement in

///

particular crimes. This is especially true since the Waco, Texas, incident at a restaurant involving members of a variety of motorcycle club members.

54. Ms. Fiscalini alleges she was terminated from her position within the Santa Cruz County Jail for exercising her freedom of association which violates the First Amendment's protection from government intrusion on these guaranteed constitutional rights.

55. Although Ms. Fiscalini did not actively wear or display anything associating her with the Hells Angels Motorcycle Club, she was dating a member of the club and thereby associating with him.

56. On August 21, 2018, Ms. Fiscalini was fired from her employment with CFMG at the insistence of the Santa Cruz County Sheriff Jim Hart.

57. Ms. Sarah Hewett acknowledged her discomfort in terminating Ms. Fiscalini's employment when she stated to Ms. Fiscalini that she tried to keep her but she was being required to follow through with the termination at the direction of her superiors and Santa Cruz Sheriff's Department. Furthermore, she acknowledged to Ms. Fiscalini that the Sergeant was demanding that she be terminated and that it was not based on any concerns with her job performance.

58. Despite Defendant Hewett's discomfort with terminating Ms. Fiscalini, she did so at the direction of her superiors.

59. Ms. Fiscalini alleges Sarah Hewett was made aware of the true reason for her firing which was solely the fact Ms. Fiscalini was dating a Hells Angel Motorcycle Club member. Ms. Hewett was fully aware that such a firing was in direct conflict with Ms. Fiscalini's constitutional right of free association, but she terminated her as directed.

60. Ms. Fiscalini alleges Santa Cruz County Sheriff Jim Hart is directly responsible for the hiring and firing of all Santa Cruz County Jail employees. In his elected capacity as the County Sheriff he is in charge of establishing policy and procedures to be followed by those working within the County Jail. As such, he was responsible for

whatever policy that allowed Deputy Baldwin to question Ms. Fiscalini regarding her dating status. Ms. Fiscalini alleges that she was terminated solely for her dating status and the fact that her boyfriend at the time was a member of the Hells Angels Motorcycle Club.

61. As a law enforcement officer, Sheriff Jim Hart was very aware he was violating Ms. Fiscalini's constitutional rights to free association, but allowed Ms. Fiscalini to be terminated despite this and without any recourse whatsoever to appeal this termination.

62. Ms. Fiscalini alleges defendant Deputy Baldwin personal requested that she be terminated due solely to Deputy Baldwin's unfounded and biased opinion regarding motorcycle club membership. Furthermore, Deputy Baldwin, as a law enforcement officer, was very aware she was violating Ms. Fiscalini's constitutional rights to free association, but pressured her superiors to fire Ms. Fiscalini despite those guaranteed constitutional rights.

63. As a direct and proximate cause of Ms. Fiscalini's unlawful termination due to the violation of her First Amendment rights, Ms. Fiscalini has suffered economic and emotional damages.

## COUNT TWO

## VIOLATION OF CIVIL RIGHTS DEPRIVATION OF DUE PROCESS AND EQUAL PROTECTION AGAINST ALL DEFENDANT'S

64. Plaintiff repeats and re-alleges paragraphs 1-68 of this petition as if fully set forth herein.

65. Defendants violated Ms. Fiscalini's Civil Rights by depriving her of Due Process and Equal Protection (42 U.S.C. 1983, Fourteenth Amendment to the United States Constitution.)

///

///

66. After being informed of termination, Ms. Fiscalini was left with no recourse. Although defendant Hewett advised her she had tried her best to keep her, she offered Ms. Fiscalini no recourse for any type of reconsideration.
67. Furthermore, once terminated, Ms. Fiscalini was unable to request any type of review or hearing regarding the alleged revocation of her security clearance. Ms. Fiscalini was given absolutely no opportunity to explain or rebut whatever had caused the security clearance revocation.
68. In fact, Ms. Fiscalini was never even notified of any particulars found in any background check that would explain the revocation of her security clearance.
69. Ms. Fiscalini asserts it is unconscionable to believe he was terminated because of a relationship she had with a member of the Hell Angels Motorcycle Club.
70. It is shocking to the conscience to accept the Defendants' firing of Ms. Fiscalini for no other reason than her constitutionally protected right to freely associate peacefully with those she wishes to associate. Ms. Fiscalini has no criminal record at all.
71. In light of the Defendants' policy of terminating employees solely for engaging in protected speech and free association, a process should exist for an employee to explain or argue against their termination.
72. The County of Santa Cruz Sheriff's Department as a governmental entity, should at a minimum, have some procedures in place to protect the rights of their employees while also allowing them to promote the efficiency of the public services it performs through its employees.
73. Ms. Fiscalini's relationship with a member of the Hells Angels Motorcycle Club has no bearing on her ability to perform the duties she was hired to perform with the County of Santa Cruz Jail.
74. Ms. Fiscalini was terminated solely for her association with a member of a motorcycle club. This club is a social club not dissimilar to other social clubs such as the Shriners, Masons, or any church or religious organization.  Yet the Santa Cruz

///

Sheriff's office as well as CFMG gladly hires and retains members of these types of organizations.

75. Because Ms. Fiscalini was terminated for engaging in a fundamental constitutional right, mainly her right to free association to date who she pleases despite his membership in a motorcycle club, the Defendants must not infringe those rights for any mere rational justification the can create after the fact.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that a judgment be entered against defendants for the following relief:

A.  Damages for mental injuries, pain and suffering and emotional trauma in an amount to be proven at trial;

B.  Compensatory and consequential damages, special and general damages, in an amount to be proven at trial;

C.  Economic Damages and Business Loss in an amount to be proven at trial;

D.  Reasonable attorney fees, cost and prejudgment interest incurred in pursuing this action as provided in 42 U.S.C. Section 1983;

E.  Any such relief that this Court deems just and equitable under the facts of this case.

## **DEMAND FOR JURY TRIAL**

Comes now Plaintiff Jacklyn Fiscalini demands a jury trial on all issues in the above-captioned action as allowed by law.

DATED  August 21, 2020

/s/ Michael K. De Kruif
Michael K. De Kruif, SBN 214714
Law Offices of Richard M. Lester
7334 Topanga Canyon Boulevard
Suite 200
Canoga Park, CA 91303
818/906-1111
818/992-1515 (Fax)